In re COLEMAN AMERICAN COMPANIES, INC., American Properties, Inc., Coleman American Moving Services, Inc., A Kansas Corporation, Coleman American Moving Services, Inc., A Nebraska Corporation, Coleman American Moving Services, Inc., An Alabama Corporation, Coleman American Moving Services, Inc., A Louisiana Corporation, Debtors.

UNITED STATES of America, Internal Revenue Service, Plaintiff,

v.

COLEMAN AMERICAN COMPANIES, INC., American Properties, Inc., Coleman American Moving Services, Inc., A Kansas Corporation, Coleman American Moving Services, Inc., A Nebraska Corporation, Coleman American Moving Services, Inc., An Alabama Corporation, Coleman American Moving Services, Inc., A Louisiana Corporation, Defendants.

Bankruptcy Nos. 80–40155 to 80–40160. Adv. No. 82–0254.

United States Bankruptcy Court, D. Kansas.

Jan. 13, 1983.

See also, Bkrtcy., 20 B.R. 267.

R. Pete Smith, of McDowell, Rice & Smith, Kansas City, Kan., for debtors.

G. Scott Nebergall, Dept. of Justice, Washington, D.C., for I.R.S.

## MEMORANDUM AND ORDER

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 11 proceeding, the debtor-in-possession objected to various IRS proofs of claim before confirmation. The hearing on this matter took place after confirmation of the plan of reorganization.

The issues presented for determination are:

1. Which party carries the burden of proof where the debtor objects to IRS proofs of claim.

2. Are tax penalties that are not in compensation for actual pecuniary loss entitled to priority claim treatment.

3. Did the parties sustain their respective burdens of proof in the instant objections.

A hearing was held, briefs have been submitted, and the matter is ready for resolution.

## FINDINGS OF FACTS

The various Coleman companies (Coleman) filed their chapter 11 petition in bankruptcy on March 5, 1980.

In November, 1978 Coleman of Nebraska and Coleman of Kansas were delinquent to the IRS in payment of unemployment taxes (F.U.T.A.) and social security withholding taxes (F.I.C.A.). Max Kennedy, a Revenue Officer with the IRS, was assigned the Kansas Coleman and Nebraska Coleman files to try and work out the delinquencies. At first, he attempted to have the delinquency cured in a single payment, but because the delinquency was over $100,000, Coleman could not comply. Next, a written agreement was executed between the Kansas and Nebraska Coleman and the IRS. Attached to the agreement was a payment schedule calling for installment payments of $3,000. To secure the arrangement, a mortgage on real estate held by American Properties, Inc., a related holding company to Coleman, was granted.

Some payments were mailed to the IRS and others were delivered in person. Coleman, however, defaulted in the agreement by not making the proper $3,000 payments, or by sending checks that bounced.

During the time the default in the agreement occurred, similar tax problems began to arise with other Coleman companies. After the default, Nebraska and Kansas Coleman continued to make $3,000 payments, but some of the payments were used by the IRS to "put out the fires" of other Coleman companies. The IRS through Max Kennedy contends that the $3,000 was never applied to other Coleman company tax obligations without first receiving the approval of James or Doug Coleman, officers of the various Coleman companies, or at least first letting them know what he was going to do.

James Coleman testified that he did not have any other agreements with the IRS to apply money to the liabilities of other companies. He testified that his primary concern was satisfying the Kansas and Nebraska obligations to satisfy the debt and release the collateral. Doug Coleman also testified that he had no agreements with Mr. Kennedy to apply funds other than according to the written agreement. Doug Coleman further testified that he did not have the authority to make such an agreement.

Part of the problem with application of funds involved the nature of Coleman's directions to the IRS. Cashier checks were issued to the IRS and the remitter was simply Coleman American Moving Services, without any indication which Coleman company (Nebraska, Kansas, Alabama or Louisiana Coleman) was the actual remitter. None of the checks specified on which Coleman entity's behalf they were sent. Also, the IRS had supplied Coleman with computer cards for each entity's obligation. A computer card for an entity was supplied and was to be submitted to the IRS each time that entity made a payment. There were problems with the computer cards, however, and at times, Coleman submitted a payment on behalf of one company with a computer card indicating the payment was on behalf of another company.

From the evidence, both documentary and testimony, the Court finds that there was no misapplication of Coleman payments after the default. The Court found the testimony of Mr. Wood and the lack of a notation on checks, the failure to designate a specific entity on checks, and the computer card problems more persuasive.

The Court now turns to the specific allegations surrounding the proofs of claim in controversy.

*Claim No. 268—Kansas Entity*

Coleman asserts the IRS claim is overstated by $8,510.44 plus interest because the IRS did not apply payments pursuant to the agreement. The IRS proof of claim No. 268 is for a total of $304,746.61. A portion is secured by filed tax liens and the mortgage executed by the parties when the payment agreement was executed. The claim is as follows:

A. Secured Claims (Notice of Federal tax lien filed under internal revenue laws before petition date)

| Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Penalty to Petition Date | Interest to Petition Date | Notice of Tax Lien Filed: Date | Office Location |
|---|---|---|---|---|---|---|---|
| WT–FICA | 06–30–78 | 09–11–78 | $ 10.00 | $ 7,883.95 | $7,006.94 | 10–26–78 | Sec of State |
| WT–FICA | 09–30–78 | 11–07–78 | 93,526.41 | 12,617.22 | 8,475.63 | 12–11–78 | Sec. of State |
| WT–FICA | 03–31–79 | 06–18–79 | 60,180.73 | 3,309.39 | 3,425.38 | 06–18–79 | Sec. of State |

For the purposes of section 506(b) of the Bankruptcy Code, post petition interest may be payable.

B. Unsecured Priority Claims under section 507(a)(6) of the Bankruptcy Code

| Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|
| WT–FICA | 12–31–79 | 03–24–80 | $41,027.61 | $459.35 |
| WT–FICA | 01–01–80 to 03–05–80 | Assessment Prohibited by B/C Sec. 362(a)(6) | 51,591.62 | – 0 – |
| FUTA | 12–31–79 | 03–17–80 | 4,243.76 | 47.44 |
| FUTA | 01–01–80 to 03–05–80 | Assessment Prohibited by B/C Sec. 362(a)(6) | 1,367.22 | – 0 – |
| HIGHWAY USE | 07–01–79 | 10–22–79 | 3,561.00 | – 0 – |

C. Unsecured General Claims

| Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Penalty to date of petition on unsecured priority claims | | $5,012.96 | |
| Penalty to date of petition on unsecured general claims | | $_____ | |

This claim reveals that the IRS either has not assessed the asserted priority taxes, or assessed them after the chapter 11 petition was filed.

*Claim No. 260—Kansas Entity*

This is an administrative claim for post-petition taxes. There has not been an assessment. The claim is as follows:

Administrative Claims

| Kind of Tax | Tax Period | Tax Due | Accrued Interest as of the Date of this Request | Accrued Interest as of the Date of this Request | Balance Due |
|---|---|---|---|---|---|
| WT–FICA | 06/30/80 | $29,988.84 | $2,111.59 | $9,141.57 | $41,242.00 |
| WT–FICA | 09/30/80 | $14,572.11 | $ 398.44 | $1,592.92 | $16,563.47 |

Amount due as of date of this request — $57,805.47

Dollar Amount per day at which interest will accrue after date of this request — $ 17.81

Dollar Amount per month at which late payment penalty will be charged (at ½ of 1 percent a month) after the date of this request — 222.80

Coleman asserts that the tax of $14,572.11 was paid in the following quarter of 1980. Coleman presented tax deposit receipts tending to substantiate its explanation. Furthermore, an IRS witness, Mr. Wood, indicated that the following quarter had a large credit for FICA taxes due and owing from the IRS back to the debtors. Mr. Wood would not testify that he could state for certain, but he did testify that it was quite possible the credit for the 4th quarter taxes was really Coleman's payment of 3rd quarter taxes. Thus, there was essentially a wash.

The IRS "assessed" these taxes after the bankruptcy petition was filed, and other than Mr. Wood's explanation which lends support to Coleman's assertion, the IRS did not present any evidence other than the assessment, and proof of claim.

*Claim No. 107—Nebraska Entity*

The debtors assert this claim is overstated because the IRS did not comply with the payment agreement. The Court has rejected this assertion. The secured portion of the claim is secured by the real estate mortgage executed with the payment agreement and tax liens. The claim is as follows:

A. Secured Claims (Notice of Federal tax lien filed under internal revenue laws before petition date)

| Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Penalty to Petition Date | Interest to Petition Date | Notice of Tax Lien Filed: Date | Office Location |
|---|---|---|---|---|---|---|---|
| WT–FICA | 09–30–78 | 11–07–78 | $ 6,761.87 | $4,283.73 | $2,308.41 | 11–15–79 | Sec of State |
| WT–FICA | 03–31–79 | 06–18–79 | 27,767.96 | $1,526.69 | $1,580.41 | 08–02–79 | Sec. of State |

For the purposes of section 506(b) of the Bankruptcy Code, post petition interest may be payable.

B. Unsecured Priority Claims under section 507(a)(6) of the Bankruptcy Code

| Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|
| WT–FICA | 12–31–79 | 04–07–80 | $11,184.20 | $125.31 |
| WT–FICA | 01–01–80 to 03–05–80 | Assessment Prohibited by B/C Sec. 362(a)(6) | 22,549.38 | – 0 – |
| FUTA | 12–31–79 | 03–24–80 | $ 1,891.14 | $21.14 |
| FUTA | 01–01–80 to 03–05–80 | Assessment Prohibited by B/C Sec. 362(a)(6) | 615.85 | – 0 – |

C. Unsecured General Claims

| Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|

Penalty to date of petition on unsecured priority claims $6,681.34

Penalty to date of petition on unsecured general claims $_____

Assessments on the unsecured portion were either not made, or made after the chapter 11 petition was filed.

*Claim No. 261—Alabama Entity*

The IRS claims an unsecured priority claim as follows:

| Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|
| WT–FICA | 03–31–78 | 03–02–81 | $23,289.57 | $4,240.70 |
| WT–FICA | 01–01–80 to 03–05–80 | Assessment Prohibited by B/C Sec. 362(a)(6) | 23,016.94 | – 0 – |
| FUTA | 12–31–79 | 03–24–80 | 8,320.42 | 93.01 |
| FUTA | 01–01–80 to 03–05–80 | Assessment Prohibited by B/C Sec. 362(a)(6) | 2,068.88 | – 0 – |
| EXCISE TAX | 3–31–77 | 05–21–79 | 90.22 | 16.59 |
| EXCISE TAX | 06–30–77 | 05–21–79 | 186.01 | 30.91 |
| EXCISE TAX | 09–30–77 | 05–21–79 | 347.40 | 51.61 |
| EXCISE TAX | 12–31–77 | 05–21–79 | 312.77 | 40.94 |
| EXCISE TAX | 03–31–78 | 05–21–79 | 252.06 | 29.31 |
| EXCISE TAX | 06–30–78 | 05–21–79 | 250.09 | 25.30 |
| EXCISE TAX | 09–30–78 | 05–21–79 | 218.67 | 18.81 |
| | | | $58,353.03 | $4,457.18 |

The IRS also claims penalties in the amount of $7,563.71. Coleman specifically objects to $23,289.57 plus interest of FICA taxes claimed for the tax period March 3, 1978, and assessed by the IRS after the bankruptcy petition was filed. Coleman's

evidence showed proof of payment of its first quarter 1978 FICA taxes through quarterly income tax returns. In fact, until March, 1981, the IRS did not believe Coleman owed any money for the first quarter of 1978. The IRS determined additional taxes were owed only after receiving a report from the Social Security Administration (SSA). This report, presumably based upon a comparison between employer reported wages paid and employee reported wages received, indicated that Coleman should have withheld additional FICA taxes and thus owed this amount to the government. Neither the IRS witnesses nor even IRS counsel had independent knowledge of the SSA report. The assessment was apparently based on a telephone call from an unknown person at the SSA. The IRS exhibit 3 purporting to be the SSA study could not be substantiated or explained. A foundation could not be laid, and the Court did not allow it to be admitted into evidence. While both presentations of evidence on this tax were weak, the Court believes Coleman presented more than just an assertion that the tax was not owed. Whether in the case-in-chief or in cross examination of the IRS witnesses, Coleman elicited testimony and thus presented evidence that tended to bring into question whether the tax was really owed. Certainly until recently, the IRS itself did not believe a tax was owed. And yet, the IRS did not attempt to have a SSA employee verify, explain or corroborate the SSA report.

The Court's decision on this portion of Coleman's objection is addressed in the conclusions of law.

Next, Coleman objects to the portion of claim No. 261 representing excise taxes. Apparently, Coleman applied for an exemption from these taxes, provided to interstate common carriers, but the exemption was denied. A letter notifying Coleman of its right to appeal was sent, but Coleman did not appeal.

*Claim No. 75—Louisiana Entity*

The parties agree this priority claim should be reduced by $1,904.90. Penalties are also claimed in the amount of $2,511.20.

## CONCLUSIONS OF LAW

### I. Burden of Proof—Production:

In *Whitney v. Dresser,* 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906) (Holmes, J.), the Supreme Court held that a proof of claim is prima facie evidence of the validity of the claim. In bankruptcy proceedings, the burden is on the objecting party to go forward with evidence establishing the basis of the objections.

The court then determines whether the proof has overcome the prima facie case. If the objecting party succeeds, the claimant has the burden of persuasion to prove the validity of the claim by a preponderance of the evidence.

1 Norton, Bankruptcy Law & Practice § 28.06 (1981). See also Local Bankr.Rl. 3001(b)(4).

In the instant case, there are 5 filed IRS proofs of claim in issue. These proofs of claim constitute prima facie evidence of the validity of the claims.

### II. Burden of Proof—Persuasion:

The IRS argues that because tax assessments were made by the Commissioner, the burden of persuasion rests on the taxpayer, Coleman, and not the claimant, IRS. See *United States v. Rexach,* 482 F.2d 10 (1st Cir.1973), 47B C.J.S. Internal Revenue § 1081 (1982). The IRS, however, has made a number of post-petition assessments without asking for or receiving relief from the automatic stay in violation of 11 U.S.C. § 362(a)(6), and now seeks retroactive relief from the automatic stay. In effect, the IRS is requesting the Court to ratify its acts. The IRS contends that retroactive relief from the stay will cause "no interference with or harm to the pending bankruptcy cases." (IRS Memorandum in Support of Motion to Lift Automatic Stay, pg. 2).

Under the IRS burden of persuasion theory, however, if the Court grants retroactive relief, the IRS assessments would be proper and Coleman would have the burden of persuasion. If the Court denies retroactive relief, the assessment

would be invalid and void, because acts done in violation of the automatic stay are void and without effect. 2 Collier on Bankruptcy ¶ 362.11, at 362–58 (15th Ed.1982). Without a valid assessment, the claimant, the IRS, would have the burden of persuading the Court that its claims were proper. There is no authority in the Bankruptcy Code to grant retroactive relief from the automatic stay. The Court has not found any cases in which such relief was afforded, and the IRS does not cite any cases in its memorandum. To afford such relief would be to encourage creditors to act now and seek Court approval later. Such a system would give creditors the impetus to determine, sua sponte, if there is "cause" for granting relief. A creditor would examine its position, determine there was cause, essentially "grant" itself relief, act in violation of the stay and at some later date, come into Court asking for ratification of the acts. Such a course of conduct is improper and abhorrent to the automatic stay of § 362. Furthermore, violations of the automatic stay are subject to punishment by contempt. There are ample means for prompt relief in the Code. 2 Collier on Bankruptcy § 362.04 (15th Ed.1982). The Court is aware the IRS is a large and complex governmental agency whose wheels, once in motion, are not quickly or easily halted. The Court is quite certain the post-petition assessments were made as a result of these wheels. The Court, however, cannot overlook the fact that the stay was violated. Size of the entity, innocence of intent, or difficulty in halting the wheels in motion are not excuses for or exemptions from automatic stay violations. This Court will not ratify, sanction or approve such conduct, and accordingly the request for retroactive relief from the stay is denied. Any assessments made after March 5, 1980 are void and of no effect. Where assessments for pre-petition taxes were made after March 5, 1980 without relief from the stay, the IRS has the burden of persuasion like any other creditor.

### III. Interest

■ Coleman concedes that priority claims under § 507(a)(6) include any interest that accrued on the claim before the bankruptcy petition was filed. S.Rep. 95–1106, 95th Cong., 2nd Sess. 17 (1978). To the extent the underlying tax claim is allowed, interest that was matured as of the date the bankruptcy petition was filed, is a proper part of the claim.

### IV. Penalties

■ The secured claims of the IRS include penalties which the IRS admits are non-pecuniary loss penalties. IRS has a secured claim to the extent of the value of its interest in Coleman's property securing the claim. 11 U.S.C. § 506(a). The Court has not been asked to value the property to which the IRS lien, mortgage or security interest has attached, and the IRS never made an election under § 1111(b)(2). Without knowing the value of the property and priorities among creditors, the Court cannot determine the extent of IRS's interest in Coleman's property. Thus, the Court's ruling is limited to the following:

To the extent the IRS is undersecured, its liens are voided under 11 U.S.C. § 506(d), and the remaining portion of its claim is unsecured. *In Re Frost,* 19 B.R. 804, 8 BCD 1317 (D.Kan.1982). The portion of the penalties that are a part of the remaining unsecured claim, or that are claimed as priority penalties, are not priority claims under 11 U.S.C. § 507(a)(6)(G) because the IRS has conceded they are not penalties "in compensation for actual pecuniary loss." Rather, they are unsecured, *non-priority* claims, to be treated like other unsecured claims under Coleman's confirmed plan.

### V. Specific Objections to Proofs of Claim

#### A. Claim No. 268—Coleman American of Kansas

■ Coleman asserts the IRS claim is overstated by $8,510.44 plus interest because the IRS did not properly apply payments from Coleman. The secured portion of the claim was properly assessed by the IRS prior to the filing of Coleman's chapter 11 petition. Thus Coleman has both the burden of production and persuasion in con-

testing this portion of the claim. The unsecured priority portion of IRS's claim was either not assessed or assessed after March 5, 1980 in violation of § 362(a)(6). These assessments are void and of no effect. Thus, Coleman has the burden of production and the IRS has the burden of persuasion in the controversy surrounding this portion of the claim.

The Court holds that Coleman met its burden of production through the presentation of evidence of a payment application agreement with the IRS. This portion of the claim was properly assessed, however, and the Court does not believe Coleman carried its burden of persuasion. The payment agreement had been breached. Coleman checks were not designated. Incorrect computer cards were returned with payments resulting in IRS computer application of funds in accord with the computer card directions, instead of in accord with what Coleman meant to do.

The unsecured portion of the claim was improperly assessed, and the Court believes the IRS carried its burden of persuasion through the testimony it presented that Coleman direction of payments were no longer in force.

Therefore, Coleman's objection to Claim No. 268 is overruled. It is ordered that IRS has a secured claim including penalties and interest to the extent of its interest in Coleman's property. It has an unsecured priority claim to the extent its secured claim is undersecured under 11 U.S.C. § 506 and to the extent it claimed an unsecured priority claim. The priority claim does not include penalties. Any penalties that are not secured are unsecured, non-priority claims.

### B. Claim 260—Coleman American of Kansas

■ This claim is for taxes due after the filing of the Chapter 11 petition. The IRS did not indicate an assessment was made on its proof of claim, but in fact an assessment was made after the bankruptcy petition was filed. It is void and of no effect, and therefore the burden of production is carried by Coleman, and the burden of per-

suasion is carried by the IRS. Coleman produced evidence indicating it had paid $14,572.11 in the third quarter of 1980, while in the chapter 11 proceeding. Roger Wood, special procedures division of IRS, testified that a miscredit appeared to have been made resulting in a tax obligation for the third quarter and a *tax credit* in almost the same amount for the immediately following fourth quarter of 1980. Wood indicated it was likely that the deficiency was actually paid but a bookkeeping error had been made.

Although Wood would not, or could not, testify with absolute certainty that the deficiency and following credit were a wash, this is the *only* explanation offered by the IRS, thus tending to persuade the Court that Coleman's explanation was correct. Ironically, the IRS had the burden of persuading the Court that its proof of claim was correct, and instead persuaded the Court that $14,572.11 was not owing because it should be offset against a fourth quarter credit. Accordingly, Coleman's objection to $14,572.11 plus $398.44 interest and $1,592.92 penalty is sustained.

The remainder of the claim was not objected to and is allowed as an administrative expense, under § 503(b)(1)(B)(i), *including penalties* because § 503(b)(1)(C) allows an administrative claim for tax penalties without regard to whether or not the penalties are for actual pecuniary loss.

### C. Claim No. 107, Coleman American of Nebraska

■ This claim consists in part of a claim secured by tax liens and a mortgage on real estate in Manhattan, Kansas, and unsecured priority claims. The secured claim was assessed prior to the filing of the chapter 11 petition, and includes tax, interest and non-pecuniary penalties. To the extent the secured portion of the claim is undersecured, the tax and interest amounts are priority claims and the penalty portion is an unsecured, non-priority claim.

The taxes constituting the unsecured portion of the claim were either improperly assessed after the chapter 11 petition was filed, or not assessed at all.

Therefore, as to the secured portion of the claim, because there were proper assessments, Coleman bears both the burden of production and the burden of persuasion. As to the unsecured priority portion of the claim, because there are no valid assessments, Coleman bears the burden of production, and the IRS bears the burden of persuasion.

Coleman objects to these taxes based on its direction of payment argument. The Court has already stated that Coleman's explanation of the application of tax payments was unpersuasive, and the IRS's explanation to be the more convincing. Therefore, as to the contested taxes in which Coleman had the burden of persuasion, it has failed to carry the burden. As to the contested taxes in which IRS had the burden of persuasion, the burden has been carried. Accordingly, Coleman's objection to the taxes in claim No. 107 is overruled. The Court orders that IRS has a secured claim including penalties and interest to the extent of its interest in Coleman's property. It has an unsecured priority claim to the extent its secured claim is undersecured and to the extent it claimed an unsecured priority claim. The priority claim does not include penalties. Any penalties that are not secured are unsecured, non-priority claims.

### D. Claim No. 261

Claim No. 261 consists of an unsecured priority claim. Coleman objects on two grounds. First, Coleman asserts that the FICA withholding tax of $23,289.57 was already paid. Second, Coleman asserts that the excise tax of $1,657.22 is improper because Coleman was exempt from such a tax.

### i. FICA

■ The FICA tax in question was assessed by the IRS after Coleman filed its chapter 11 bankruptcy petition. This assessment is void, as previously discussed. Thus, Coleman has the burden of production and IRS has the burden of persuasion. Coleman produced evidence in exhibit C (a 941 quarterly return) indicating it had paid 100% of the FICA taxes due. The IRS claimed that the amount due in claim 261 represented a tabulation by the Social Security Administration purportedly comparing W–2 forms with Coleman's 941 return. The document explaining the adjustment was not admitted into evidence and the IRS offered no other evidence or testimony explaining the discrepancy. Absent some testimony or evidence, the Court was essentially presented by the IRS with a proof of claim asserting an additional $23,289.57 is owed. On the other hand, the Court was presented with documented proof by Coleman that its FICA was completely satisfied for the tax quarter in question.

The explanation of the additional tax given by Roger Wood, an IRS revenue officer, was based on supposition and conjecture. He did not know how the Social Security Administration arrived at its figures, and he did not participate in the Social Security Administration comparison. He could not say the comparison was accurate. From his own knowledge, as an IRS representative, Mr. Wood could not say Coleman owed any more FICA taxes.

The IRS presentation on this point was far from persuasive. Its evidence consisted of hearsay, documents without foundations, supposition, conjecture and speculation. Therefore, the Court finds that Coleman met its burden of production, but the IRS failed to carry its burden of persuasion.

Accordingly the Court rules that Coleman's objection to the IRS claim of $23,289.57 plus matured interest in the amount of $4,240.70 is sustained.

### ii. Excise Tax

■ The excise taxes in question were assessed by the IRS before the chapter 11 petition was filed. Therefore, Coleman bears both the burden of production and persuasion. The excise taxes are on telephone services. Coleman requested an exemption to the taxes to which it might have been entitled, but the request was denied. Coleman was informed of its right to appeal the decision to deny the exemption, but an appeal was not taken.

No other explanation was offered by Coleman. Therefore, Coleman has not pro-

duced any evidence except to assert the excise taxes should not be owed because Coleman should have been exempt. Such an assertion is not sufficient to carry its burden of production. Furthermore, even if the burden of production was met, such an explanation is unpersuasive. Coleman had an opportunity to contest the denial of exemption, but chose not to. Its explanation now is unconvincing, and accordingly, the Court overrules its objection to excise taxes in claim 261. To the extent claimed penalties are attributable to the excise taxes, they are allowed only as an unsecured, non-priority claim.

### E. Claim No. 25—Coleman American of Louisiana

The parties agree that this unsecured priority claim should be reduced by $1,904.90, and the Court so orders. The penalties claimed are an unsecured, non-priority claim.

Therefore, the Court sustains and overrules the debtors' objections in accordance with the foregoing Conclusions of Law.

IT IS SO ORDERED.