**In re Peter KONTARATOS, Valerie Kontaratos, Debtors.**

**Bankruptcy Nos. 180–00189, 180–00190.**

United States Bankruptcy Court, D. Maine.

May 11, 1983.

Louis Kornreich, Gross, Minsky, Mogul & Singal, Bangor, Maine, for debtors.

Reba Raffaelli, Tax Atty., Dept. of Justice, Washington, D.C., for U.S.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON OBJECTION TO CLAIM OF THE UNITED STATES

HAROLD LAVIEN, Bankruptcy Judge.

This matter came before the Court on the debtors' objection to the claim of the United States. Peter and Valerie Kontaratos, husband and wife, filed separate Chapter 11 petitions on June 12, 1980 in the United States Bankruptcy Court for the District of Maine. On November 23, 1982, the United States filed a proof of claim against each debtor, showing that Valerie Kontaratos (hereinafter "Valerie") was indebted to the United States for unpaid taxes in the amount of $30,030.40, and that Peter Kontaratos (hereinafter "Peter") was indebted to the United States for unpaid taxes in the amount of $36,225.61. On July 21, 1982, the United States filed amended proofs of claim, showing that Valerie was indebted to the United States in the amount of $30,-030.40 and that Peter was indebted to the United States in the amount of $41,532.67. The proofs of claim are based upon a determination by the Commissioner of the Internal Revenue Service that Peter and Valerie Kontaratos failed to segregate and pay over withholding and Social Security taxes as required under federal tax law. The United States alleges that Peter and Valerie were the shareholders, officers, and directors of three corporations known as the Gourmet Diner, Inc., (hereinafter "Gourmet"), Ocean Inn Restaurant (hereinafter "Ocean Inn"), and Apollo Queens Center Cafeteria, Inc., (hereinafter "Apollo"). As officers, directors and shareholders, the United States claims that Peter and Valerie were the people responsible for withholding taxes from the employees and paying them over to the Government. The law requires that these withheld taxes be held in trust for the United States. *Internal Revenue Code* § 7501, 26 U.S.C. § 7501; *Kalb v.*

*United States,* 505 F.2d 506, 510 (2nd Cir. 1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). If an employer fails to pay the taxes over to the United States, the employer or responsible person of the employer is liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. *Internal Revenue Code* § 6672, 26 U.S.C. § 6672. The United States makes the following § 6672 claims against the debtors relating to the following corporations:

Gourmet Diner, Inc.
Valerie and Peter Kontaratos--Jointly
and Severally

| | |
|---|---|
| 4th quarter 1971 | $ 824.22 |
| 1st quarter 1972 | $1,628.99 |
| 2nd quarter 1972 | 1,545.27 |
| 3rd quarter 1972 | 1,104.21 |
| 4th quarter 1972 | 800.68 |
| 1st quarter 1973 | $1,031.86 |
| 2nd quarter 1973 | 1,262.38 |
| 3rd quarter 1973 | 1,184.85 |
| 4th quarter 1973 | 2,372.73 |
| 1st quarter 1974 | $1,138.82 |
| 2nd quarter 1974 | 1,405.48 |
| 3rd quarter 1974 | 1,689.51 |
| 4th quarter 1974 | 2,054.04 |
| 1st quarter 1975 | $1,620.35 |
| 2nd quarter 1976 | $1,138.82 |
| Total | $20,802.21 |

Ocean Inn Restaurant, Inc.
Peter Kontaratos--Individually

| | |
|---|---|
| 2nd quarter 1975 | $2,923.86 |
| 3rd quarter 1975 | 2,163.02 |
| 4th quarter 1975 | 4,338.83 |
| Total | $9,425.71 |

Apollo Queens Center Cafeteria, Inc.
Valerie and Peter Kontaratos--
Jointly and Severally

| | |
|---|---|
| 2nd quarter 1975 | $2,192.89 |
| 3rd quarter 1975 | 1,888.89 |
| 4th quarter 1975 | 2,500.63 |
| Total | $6,582.41 [1] |

Peter and Valerie dispute the claim of the IRS by arguing that they were not the persons responsible for paying the taxes due from their corporations. They addi-

---

1. An additional claim of $3,230.50 against Valerie Kontaratos for Sea Queen III, Inc. was conceded by the debtor.

The Court notes that the above totals do not match the amounts on the proofs of claim. No

tionally argue that their failure to pay was not willful.

Peter and Valerie concede that they were officers and shareholders of Gourmet and Apollo. They assert that at no time were they shareholders or officers of Ocean Inn.

Both Peter and Valerie testified at trial to the following facts. The Kontaratos' went into the restaurant business in 1970. In order to open the Gourmet Diner at that time, the debtors borrowed money from individuals and finance companies. One of the individuals who loaned them money was a Nick Giacomino. From the time that the business opened, Valerie had sole check signing authority for the corporation. Peter testified that Giacomino would come into the restaurant almost every day. In 1973, Giacomino began taking money from the cash register, allegedly in repayment of debts owed by the Kontaratos'. The amounts taken by Giacomino or the amount of the debt owed to Giacomino was never established. A number of the restaurant's suppliers were paid in cash on the date of delivery by Peter. Peter testified that he only paid small bills in cash and that Giacomino had to authorize the payment of large bills, not because of any legal authority but because he terrorized them. Peter testified that in 1974, the restaurant was foreclosed upon and Giacomino took over after the foreclosure. Giacomino operated the restaurant under a new corporate name, Ocean Inn, Inc. The Kontaratos' claim they were not officers or directors of Ocean Inn. Valerie was, however, an employee of the Ocean Inn and was on the payroll after the foreclosure and continued to handle the books, pay bills and sign checks. The taxes claimed as a result of the operation of Ocean Inn are against only Peter Kontaratos. In 1975, after the foreclosure, the debtors opened a new restaurant, the Apollo Queens Center Cafeteria, Inc. Peter testified that he and his wife ran the restau-

one has explained the reason for this and the Court is accepting the figures as submitted in the Government's brief. These figures are not disputed by the debtors.

rant for the first six months of 1975 and then Giacomino again started coming by and taking cash out of the register. Again, Giacomino exercised such control that the debtors could not pay the taxes. The debtors never clearly stated how Giacomino exercised that control. In their trial brief, the debtors stated that there was a threat to their physical safety.

In the winter of 1976, Peter and Valerie were investigated by agents of the Internal Revenue Service, (hereinafter "IRS"). When asked why he never told the IRS about Giacomino's involvement, Peter testified that the IRS did not ask and he was afraid to mention Giacomino's name.

The Government presented evidence that Peter had used funds from the Gourmet Diner to finance other ventures.[2] In 1972, Peter purchased a vessel named "Retriever" partially with checks from the Gourmet Diner. In 1972, he invested $15,000 in the Rocky Point Diner, $2,000 was cash from the Gourmet Diner. In 1973, Peter and Valerie purchased real estate at 51–17 Van Loon Street, using $7,500 in cash receipts from Gourmet Diner. The memorandum also stated that Valerie stated that Morris Zweig, a private moneylender, loaned them $65,000 in cash and check between 1973–74 and Zweig threatened "to kill her" when payment was late.

Mr. Kontaratos also testified that he had used monies from the Gourmet Diner to finance business transactions. However, his memory was not that good and he could not remember the exact amounts, although he did not dispute the above statements when questioned about them.

The testimony of Ted M. Hunt was offered by way of deposition. Mr. Hunt began working for the Kontaratos' in 1974 as an independent, part-time bookkeeper. He testified that in the latter part of 1974, he became aware that federal withholding taxes were not being paid. He had prepared Forms 941 and 940 (federal withholding tax forms),[3] and while going through some records, he came across the original copies of the forms in the envelopes so he knew they hadn't been paid. When he spoke with Peter about the taxes, Peter had indicated that he knew they hadn't been paid, but that he would pay them. At trial, Mr. Kontaratos testified that it was his intention to pay the taxes "as soon as we have money".

In interviews with the IRS in 1976,[4] Peter had told the IRS agents that he did not have the money to pay the taxes. He asserted that he had to pay ever pressing private creditors instead of the Government.

Valerie Kontaratos' testimony was substantially the same as her husband's, that they did not pay the taxes because Giacomino would not permit it. She did testify that she had check signing authority for the Gourmet Diner. She also had check signing authority for the Apollo Queen during the quarters in question. A number of checks from the Apollo Queen were offered into evidence for the months of August, 1975 and December, 1975. The checks were signed by Valerie Contaratos (sic). From September 25, 1975 on, Nick Giacomino's signature appears below Valerie's. Valerie testified that she never authorized the bank to require Giacomino's signature nor did she

2. The evidence was a Memorandum of Interview, June 6, 1976, of a meeting between the Kontaratos' and IRS agents. The evidence was introduced through the deposition of one of the agents who had been present and had signed the memorandum.

3. Mr. Hunt had been questioned by the IRS in 1976. At that time, he gave the IRS copies of the 941's which he had in his files. Copies of these returns were offered at trial. Ex. 1.

4. The Court is somewhat perplexed that it is called upon to decide this tax liability in 1983. At the trial the Government offered into evidence by way of deposition or live testimony four Memorandums of Interview between IRS agents and Peter Kontaratos, dated March 15, 1976, April 5, 1976, June 9, 1976 (Peter and Valerie) and June 30, 1976. At all of these interviews, Peter told the IRS agents that he had not filed the tax returns, that he had to pay other creditors or recited the various investments he had made. At some of the interviews he told the IRS he had no money. The Court can only wonder why the IRS waited so long to attempt to collect its claim.

remember the corporation having any other checking account.

## ISSUE OF LAW—BURDEN OF PROOF

■ ·A proof of claim is prima facie evidence of the validity of a claim.[5] Bankruptcy Rule 301(b); 11 U.S.C. § 502; *Whitney v. Dresser*, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906). The burden is on the objecting party to go forward with evidence establishing the basis of the objections. The debtor has the initial burden of persuasion. *Watson v. Thompson*, 456 F.Supp. 432 (D.Ga.1978). If the objecting party succeeds in overcoming the prima facie case, the claimant then has the burden of persuasion to prove the validity of the claim by a preponderance of the evidence. 1 Norton, *Bankruptcy Law and Practice* § 28.06 (1981) cited in *United States v. Coleman American Cos., Inc.*, 26 B.R. 825, 10 B.C.D. 185, 187 (Bkrtcy.D.Kan.1983).

■ The IRS argues that the above rendition of bankruptcy law and burden of proof does not apply to the Government. The IRS asserts that the taxpayer never loses the burden of proving that the Commissioner's determination is erroneous. *United States v. Rexach*, 482 F.2d 10, 16 (5th Cir.1973). Two recent bankruptcy cases have held that where the Commission did not make an assessment prior to the filing of the bankruptcy petition, the Government will have the burden of persuading the Court that its claim is valid. *In re Twomey*, 24 B.R. 799 (Bkrtcy.W.D.N.Y. 1982); *United States v. Coleman American Cos., Inc., supra*. The presumption of validity granted a tax assessment, *see Lesser v. United States*, 368 F.2d 306, 310 (2nd Cir. 1966), en banc, does not as yet exist since the assessment was not made pre-filing. However, even though the Government has the burden of proof, I find that the burden has been met.

## ISSUE OF LAW: LIABILITY UNDER SECTION 6672

Pursuant to 26 U.S.C. § 6672,[6] any person who is under a duty to collect and pay over taxes withheld from the wages of employees and who willingly fails to do so is liable for the total amount of the withholding tax not paid over. *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). In order to find liability under § 6672, the Court must find that the debtors were responsible persons and that they acted willfully. *See In re Twomey*, 24 B.R. 799 (Bkrtcy.W.D.N.Y.1982).

■ A responsible person under 26 U.S.C. § 6672 includes all those connected with a corporation who participate in the decision concerning payment to creditors and disbursal of funds. *Monday v. United States*, 421 F.2d 1210 (7th Cir.1970) cert. denied 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). *Harrington v. United States*, 504 F.2d 1306 (1st Cir.1974). Other factors which may be relied upon in determining whether or not a person is responsible for payment of taxes withheld from wages of employees include: identity of officers, directors and shareholders of the corporation, ability of the individual to sign checks of the corporation, and identity of the individuals who hired and fired employees. *In re Twomey*, 24 B.R. 799 (Bkrtcy.W.D.N.Y. 1982) citing *Silberberg v. United States*, 524 F.Supp. 744, 747 (E.D.N.Y.1981). The individual found responsible must have significant but not necessarily exclusive authority

---

**5.** The debtor asserts that the Government's proof of claim set forth insufficient facts to even establish a prima facie case. These debtors have been under investigation since 1976, and the claim states that it is for the 100% penalty. The Court rejects this contention of the debtor and finds that the proofs of claim are sufficient and in accordance with the Official Forms.

**6.** 1. Section 6672 provides in pertinent part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

to direct or control the payment of funds. *Harrington v. United States,* 504 F.2d 1306, 1312 (1st Cir.1974); *Totaro v. United States,* 533 F.Supp. 71, 73 (W.D.N.Y.1981) affirmed 697 F.2d 298 (2nd Cir.1982). Liability extends to all with responsibility and authority to avoid the default which constitutes a violation of the statute. *Harrington v. United States, supra.*

█ I find that Peter and Valerie Kontaratos were responsible persons for both the Gourmet Diner, Inc., and the Apollo Queens Center Cafeteria, Inc. They were the officers, directors and shareholders of both entities. Valerie had exclusive check signing authority throughout the entire period in question. Even though checks were offered into evidence which were co-signed by Nick Giacomino, Valerie testified that the signature authority had not been officially changed at the bank. Ted Hunt, the bookkeeper, testified that he was hired by the Kontaratos'. He further testified that he saw Peter pay trade creditors with cash from the cash register. Peter admitted that he used money from the cash register to pay trade creditors. Clearly, both Peter and Valerie were responsible persons. Peter and Valerie cannot refute their responsibility by claiming that Giacomino, who had no legal status in the corporations, would not let them pay.

█ As to the Ocean Inn Restaurant, Inc., the Government only seeks liability as to Peter. The Government's case is somewhat weaker in regard to Ocean since both Peter and Valerie have testified that they were not officers and directors and that only Valerie was an employee, not Peter. Peter also testified that he lost all interest in the restaurant after a foreclosure in 1974. The debtor offered into evidence a certificate of authority from the New York State Department of Taxation for a N.G.G. Realty Co. dated May 26, 1976. Valerie testified that N.G.G. Realty was Nick Giacomino's company and was the company that operated the restaurant after the foreclosure.

A workmen's compensation compliance certificate dated as effective from May 19, 1976 and signed by Nick Giacomino was also offered. These certificates were not really helpful because they did not cover the dates in question. The debtors did not produce any certificates of incorporation in the names of any other entities.

The disclosure statement which was originally filed by these Chapter 11 debtors in September, 1982, after the United States had filed its proofs of claim, states that

Peter initially supported himself and his family as a self-employed house painter until 1968 when he began to operate a restaurant through a corporate entity known as the Gourmet Diner, Inc., and later through an entity now known as Ocean Inn Restaurant Corporation. Valerie also worked in the restaurant in various capacities, including cook and bookkeeper.

The disclosure statement goes on to state that the Kontaratos' lost their interest in that restaurant to creditors in 1975. The taxes which the Government seeks to collect from Peter are for the last three quarters of 1975. An amended disclosure statement was filed, after this trial was completed, containing the same statements. The Court is duty bound to take judicial notice of its records and files. *In re Woodmar Realty Co.,* 294 F.2d 785, 788 (7th Cir.1961). Although Peter testified that the foreclosure took place in 1974, he did state that his memory was not good.

The Court finds the disclosure statement most convincing since it was filed substantially contemporaneously with the controversy with the United States. However, the question remains as to whether Peter is liable for the entire last three quarters of 1975. While the matter is not entirely clear, the Kontaratos' are to a large extent responsible for the problem since the disclosure statement contradicts their testimony as to lack of operational control of the Ocean Inn at any time after 1974. Nonetheless, in giving the benefit of the doubt, I find that the Government has not sustained the burden of proof as to the last two quarters of 1975 and, therefore, Peter was

only a responsible person under § 6672 for the second quarter of 1975.

In order to make a finding of liability under § 6672, the Court must also find that the failure to pay the taxes was willful. "Willfully", as used in Internal Revenue Code Section 6672, means a voluntary, conscious and intentional decision to prefer other creditors over the Government. *Burden v. United States*, 486 F.2d 302, 304 (10th Cir.1973) (*Burden*); *Spivak v. United States*, 370 F.2d 612, 615 (2nd Cir.1967) (*Spivak*) *cert. denied*, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967). Willful action does not require a bad motive as in a criminal case. *Burden, supra.* Peter and Valerie both testified that they paid trade creditors in cash from the register. In his meetings with the IRS in 1976, Peter admitted that he used money from the Gourmet Diner for investments and to pay other creditors. Both Peter and Valerie testified that they intended to pay the taxes if Giacomino would let them, even though they continued to pay other creditors. Peter told Ted Hunt he would pay the taxes as soon as he was able. Both Peter and Valerie knew the trust fund taxes were not being paid. Whether they used the money to pay other creditors, to pay Giacomino, or for investments, those actions are willful within the definition of § 6672. *Spivak, supra; Kalb v. United States*, 505 F.2d 506 (2nd Cir. 1974) *cert. denied* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975).

Based upon the above findings of fact and rulings of law, I find that Peter and Valerie Kontaratos are jointly and severally liable for the § 6672 penalty in the amount of $27,384.62 and Peter Kontaratos is individually liable for a § 6672 penalty of $2,923.86, in addition.