In the Matter of Wilbert Glenn HOLLAND, Debtor.

No. 80–11027.

United States Bankruptcy Court, N. D. Indiana, Fort Wayne Division.

July 19, 1982.

Frederick Wehrwein, Fort Wayne, Ind., for debtor.

John J. Wernet, Fort Wayne, Ind., for creditor.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

This matter is before the Court on the debtor's motion for a determination that Dana Credit Union (creditor) is in contempt of this Court in that the creditor, after notice of the debtor's petition in bankruptcy and of the Court's order of a stay pursuant to Section 362 of the Bankruptcy Code,[1] received post-petition wages of debtor as a result of a pre-petition payroll deduction agreement and applied these funds toward

payment of a pre-petition debt. Furthermore, debtor alleged that the creditor had refused to return the monies even after notice of the debtor's discharge. Debtor contends that creditor has violated the Automatic Stay of Section 362 and has ignored the Court's order of discharge. Debtor seeks damages in the amount of money deposited as a result of the payroll deduction from the date of the filing of his petition in bankruptcy, costs, and reasonable attorney's fees.

The creditor has answered in its memorandum in opposition to the motion and at the hearing that any payments made to it via the voluntary payroll deduction agreement between the debtor and his employer after the date of the filing of the bankruptcy petition were voluntary payments which may be applied to the loan and thus not in violation of orders of this Court. The Credit Union contends that it took no act to collect its claim against the debtor. The creditor pointed out that the payroll deduction agreement was between the debtor and his employer, not between the debtor and the creditor. To have the deductions discontinued, the creditor contends, the debtor need only have executed a stop payroll deduction notice and given same to the employer.

A hearing was held, briefs were filed, and the matter was taken under advisement.

### Issues

The issues to be decided are (1) whether the creditor has violated the automatic stay by receiving the post-petition wages from the payroll deduction and applying the same toward a pre-petition debt owed by the debtor to the Credit Union; (2) whether the creditor has violated the provisions of the order granting the debtor a discharge by refusing to return the deposits made pursuant to the payroll deduction; (3) and whether these violations, if established, constitute contempt.

1. 11 U.S.C.A. § 362 (West 1979).

## Findings of Fact

The debtor filed his petition for bankruptcy on November 21, 1980 seeking a discharge under Section 727 of the Bankruptcy Code.[2] Prior to this date the debtor had voluntarily executed an authorization for payroll deduction form to the attention of the payroll department of his employer, Dana Corporation. The form authorized Dana Corporation to deduct $80.00 per pay period (weekly) and to deposit this amount with the Dana Corporation Federal Credit Union (creditor). The authorization was revocable at the option of the debtor by written notice to the employer.

The Dana Corporation Federal Credit Union was listed on debtor's bankruptcy schedules and received notice from the Court of the filing and of the automatic stay sent by the Court on December 5, 1980. A copy of the discharge order was sent to creditor on January 7, 1981.

The debtor executed a form to stop payroll deductions on March 2, 1981. At the time of this hearing the creditor still retained the payroll deduction deposits and had applied some of those deposits toward payments of the pre-petition debt after having received notice of the filing and the stay.

The above facts were undisputed by the parties and the Court hereby so finds.

The debtor testified that on the day he filed his petition or within a few days thereafter he went to the Credit Union with his file marked petition papers in hand in order to tell the Credit Union to stop making the deductions from his payroll check and to stop applying the deductions to his debt. He showed his bankruptcy papers to a representative of the loan department, who, according to the debtor, told the debtor that she would not be able to help the debtor with his requests and that he should call Mr. Morris, Operations Manager, who was not in at the time. The debtor did thereafter call Mr. Morris, who, according to the debtor, said that the money would be "frozen."

The debtor testified that once he had received his order of discharge he went to the Credit Union to withdraw the money but was told it had been applied against the debt and would not be returned to him.

Mr. Morris testified that he knew of the debtor's visit to the Credit Union and his discussion with the representative regarding stopping the deductions and not applying money to the debt. Mr. Morris acknowledged that the debtor had followed-up his visit by phone call. Mr. Morris remembered that the debtor told him he had filed his petition in bankruptcy but could not otherwise remember what they had talked about. Furthermore he could not recall saying that the money would be "frozen," and he stated that the Credit Union has no such policy.

When asked about the Credit Union's procedures, Mr. Morris stated that forms to start and to stop payroll deductions are available from any teller at the Credit Union. Furthermore each teller is instructed regarding the forms and regarding making them available to members. The representative with whom the debtor first presented his requests was a teller. Mr. Morris had no answer to why this representative would not have provided the form to stop payroll deduction to the debtor and have explained the procedure. It was agreed by the parties that the debtor had executed the payroll deduction at the Credit Union only for the purpose of paying a loan from the Credit Union. So while the agreement was in fact between the debtor and his employer, all steps that the debtor took regarding his loan and automatic withdrawal were done through the Credit Union.

The debtor admitted that he did not ask for a stop payroll form. He said he did not understand that he had to. He thought his money would be held in his savings account. When asked if he (debtor) had gone to the employer to have the deduction stopped, he replied that he did not believe he had to.

The debtor stated that on the date (January 7, 1981) he received his discharge order

2. 11 U.S.C.A. § 727 (West 1979).

he went to the Credit Union to withdraw his money. When he discovered that the money had been applied to his loan, he again asked to get the withdrawal stopped. He stated that he was told that since he was not working at the time (he had been laid off) that he could not accomplish the termination while he was not working. He says he was told he would have to be working before he could cancel the deductions.

Mr. Morris testified that the procedure regarding the automatic withdrawal was that the money received pursuant to the deduction agreement each week was put into the debtor's share draft account. Then on the 15th day of each month the Credit Union makes a transaction whereby it withdraws the accumulated payroll deduction deposits from the share account and transfers this money to be applied toward payment of the loan. The Statement of Account submitted into evidence by the debtor confirms this above procedure. (Debtor's Exhibit A.)

Having heard the testimony presented and having reviewed the evidence related to this case and the memoranda filed, the Court also finds the following to be fact:

1. The Credit Union had notice, in person, from the debtor of his filing a bankruptcy petition, of his discharge, and of his desire to have the money being withdrawn from his post-petition wages no longer applied to his loan with the Credit Union.

2. The Credit Union failed to provide the debtor, upon his request to have the deduction stopped, the form necessary to accomplish this request. Further the Credit Union did not provide the debtor with advice as regards the procedure for terminating the payroll deductions, even though they admit that it was their general policy to do so.

3. The debtor had conducted all of his transactions regarding the loan and the payroll deductions with the Credit Union even though the agreement on withdrawal was between the debtor and his employer.

4. The procedures involved in the wage deduction—loan repayment arrangement in this case were that the money received (post-petition earnings) was deposited into the debtor's own share draft account. Thereafter, on the 15th day of each month, by a separate transaction, the Credit Union withdrew the money from that account and transferred it to the loan account.

### Conclusions of Law

The trustee has not involved himself in this matter and has therefore apparently abandoned any interest in funds paid from the debtor's earnings toward this loan during the ninety days prior to filing of the bankruptcy petition. Therefore the Court hereby finds that the Credit Union is entitled to retain money applied to the loan up to the date of debtor's filing of his petition in bankruptcy, November 21, 1980, including the transfers made from his share account to the loan account pursuant to the payroll deduction arrangement up to the same date.

For the reasons stated below, the Court further finds that the Credit Union has violated the Automatic Stay of Section 362(a)(6) of the Bankruptcy Code, and that the Credit Union has failed to conform to the order of this Court in granting the debtor's discharge, and, finally, that the conduct of the Credit Union in this matter constitutes contempt of this Court.

There is no doubt that the Credit Union had actual notice of the debtor's petition in bankruptcy and of the automatic stay before it continued to make transfers from the debtor's share draft account to the loan account with the Credit Union. There is no question that at the time the Credit Union made these transfers it had notice and actual knowledge that the debtor no longer wanted his post-petition earnings to be applied against his loan with the Credit Union.

Section 362(a)(6) reads:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
  (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.[3]

Subsection (b) of Section 362 provides a detailed list of the exceptions to the otherwise very broad language of Section 362(a). None of those exceptions apply in this case including the provision for setoff.

The Credit Union contends it did not violate the stay because it took *no act* to collect the debt. Rather it just received the debtor's voluntary payments of the debt through the payroll deduction arrangement. In support of this position the creditor attached to its memorandum two cases decided by other Bankruptcy Courts in Indiana and referred to Indiana Code Section 22–2–6–2 et seq.[4] regarding wage assignments.

If this Court had before it facts just as the other two Bankruptcy Courts whose decisions have been submitted herein, it is likely we would nevertheless come to a different conclusion than those Courts regarding the issue of whether a credit union's receipt and application of post-petition earnings pursuant to a payroll deduction arrangement executed prior to the bankruptcy violates the automatic stay of Section 362. We believe that the steps taken by such a credit union to apply money received against a debt owed to the credit union by the debtor is an act to collect a debt.

However because the facts and circumstances of the case at bar made the two cited cases distinguishable it is not necessary to reach the conclusion above.

The Court in *In The Matter of Short*, Bankruptcy No. IP 79–2612 B (unreported) determined that receipt of voluntary payments made on a loan by a debtor from post-petition earnings and applied to the loan by the creditor did not violate the automatic stay. The Court said that "the act of accepting said payments and crediting them to the account of the bankrupt does not constitute "action" for the collection of a debt as prohibited by notice of automatic stay."

It must first be pointed out that this case was decided under the former Bankruptcy Act. It is therefore uncertain that that Court would come to the same conclusion were it hearing the case under the Bankruptcy Code. The automatic stay provisions of the Code are different from those of the Act in that Congress brought together in one section of the Code provisions that were scattered throughout the Act. Furthermore, the language of the Code restricting creditor collections is much broader than under the Act. In addition, the Legislative History of Section 362[5] clearly demonstrates that Congress intended the stay to have broad application. The Section itself spells out the only exceptions to be considered.

Besides this major difference between the case at bar and *In The Matter of Short*, *supra*, the facts in *Short* do not indicate that the debtor specifically requested the creditor to stop the transfers to the loan account, nor did the facts show that the Credit Union had the stop payroll deductions forms but failed to provide them upon a request to have the deductions stopped, nor did the facts demonstrate that the funds were first deposited into the debtor's share account and then by separate acts removed from that account and transferred to the loan account.

Thus *In The Matter of Short* is not persuasive authority in the case at bar.

The other case brought to the Court's attention is *In re Hans*, No. 80–61269 (unreported) a decision rendered by my respected colleague, Judge Nehrig. This case was

---

**3.** 11 U.S.C.A. § 362(a)(6) (West 1979).

**4.** Ind.Code Ann. § 22–2–6–2 et seq. (Burns 1974 & Supp.1982).

**5.** H.R.Rep.No. 595, 95 Cong. 1st Sess. 340 (1977); S.Rep.No. 989, 95th Cong. 2d Sess. 54 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

based upon a petition for a contempt citation for violations of the automatic stay by a credit union's application, post-petition, of the debtor's earnings to pay a debt owed to the credit union. The case was decided under the Bankruptcy Code.

This case is also factually distinguishable from the case at bar in that the debtor there had apparently taken no action other than file his petition to rescind the authorization he had made nor to restrain the credit union from applying the money to the loan. Furthermore, the procedures of the automatic withdrawal-loan repayment were apparently different in that case. The opinion states that of the money received pursuant to the payroll deduction some went to the debtor's savings account and some went *directly* to the loan account. There was no subsequent transfer by the credit union once a month from the savings account to the loan account as in the case at bar.

■ In addition, the Court in *Hans* took the position that the conduct of the credit union therein was not "action against the debtor" and thus not a violation of the stay. We, however, read Section 362(a)(6) to be broader in its prohibitions than just acts against the debtor. The language of the stay encompasses any act to collect a claim against the debtor. We read this to be any act against the debtor, or against property of the debtor.

Given the broad language of Section 362(a)(6) i.e. stay of *any act* to collect, and given the fact that Congress itemized the only exceptions to the otherwise broad language, this Court concludes that the transfer by a creditor of post-petition money received pursuant to a pre-petition automatic withdrawal-loan repayment arrangement to pay a pre-petition debt owed to that creditor is a violation of the automatic stay unless there is clear evidence that, post-petition, the debtor actually demonstrated his or her willingness to voluntarily have post-petition earnings applied to a dischargeable pre-petition debt.

■ To be clear, we do not hold that the Credit Union violated the stay by receiving money pursuant to the arrangement in this case and depositing it into the debtor's account. This alone would not be an act to collect a debt. However, when the credit union transfers the money to pay a pre-petition debt owed to itself it has then committed an act to collect a claim and thereby violates the stay unless, as stated above there is clear evidence that, post-petition, the debtor demonstrated willingness to voluntarily have these earnings applied to the debt. Cf. *In re Lillie*, 12 B.R. 860 (Bkrtcy. N.D.Ohio 1981).

This result is consistent with the plain language of Section 362(a)(6), with the intent of Congress as demonstrated in the Legislative History, and with case law.

■ Webster's New Collegiate Dictionary defines "act" to be "a thing done." Without any doubt the procedures followed by the Credit Union in withdrawing, once a month, money from the debtor's share draft account and transferring this money to pay ' the debt was a thing done. Such a transfer requires physical acts on the part of the Credit Union in debiting one account and crediting another and in creating a proper audit trail to comply with normal banking practices.

The Court in *In re Shepherd*, 12 B.R. 151 (Bkrtcy.E.D.Pa.1981), a case which is analogous on the issue of violation of the stay though it otherwise deals with a bankruptcy under Chapter 13, held that a credit union which had retained the debtor's postpetition earnings pursuant to a payroll deduction arrangement had to disgorge them and pay them over to the debtor's attorney. In part the Court based its conclusion upon its determination that the "receipt and appropriation of the payroll deductions violated the automatic stay provided in § 362(a)(3) and (6)." Id. at 153.

■ Congressional intent seems clear. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops

*all collection efforts* (emphasis added), all harassment and all foreclosure actions." H.R.Rep.No. 595, 95 Cong. 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, p. 6296. "Paragraph (6) prevents creditors from attempting in *any way* (emphasis added) to collect a pre-petition debt." Id. at 342, U.S.Code Cong. & Admin.News 1978, p. 6298. Section 362 was added to the bankruptcy laws to protect the inexperienced, frightened, or ill-counseled debtors who might succumb to attempts to evade the purpose of the bankruptcy laws by sophisticated creditors. Id. at 342.

■ Furthermore, courts have held that inactivity on the part of a creditor with notice of the bankruptcy which permits the forces of collection to go forward is as offensive to the automatic stay provision as is activity. *In The Matter of Dohm*, 14 B.R. 701 (Bkrtcy.N.D.Ill.1981); *In re Elder*, 12 B.R. 491 (Bkrtcy.M.D.Ga.1981); *In The Matter of Dennis*, 17 B.R. 558 (Bkrtcy.M.D. Ga.1982). Admittedly the creditor here could not, itself, stop the payroll deductions. However its failure to provide the stop deduction form and to render any helpful answer to the debtor as to how he could stop the withdrawals upon his request to have them stopped is no less offensive to the stay than failure to dismiss a garnishment proceeding.

■ The Credit Union responds, however, that these transfers of funds were voluntary payments made by the debtor from post-petition earnings. The Court is not nearly as easily convinced of this as the creditor says it was. First, the bankruptcy itself puts a creditor on notice that it is to look only to the property of the estate for its claim. The filing of the petition in a liquidation case is clear indication that the debtor seeks relief from further payments of his or her pre-petition debts. Furthermore, in this case, the debtor personally communicated to the creditor on numerous occasions that he did not want any post-petition earnings withdrawn nor applied to his debt. Thus the Court is unwilling to conclude that these were voluntary payments,

nor that the debtor acquiesced in the transfer of the funds to the loan account.

■ Acts taken in violation of the automatic stay are void ab initio. *In re Young*, 14 B.R. 809 (Bkrtcy.N.D.Ill.1981); *In re Johnson*, 18 B.R. 755 (Bkrtcy.S.D.Ohio 1982). Consequently all transfers to the loan account made after the date of the petition (November 21, 1980) must be returned to the debtor plus the interest that would have been earned had that money remained in the debtor's share draft account. *In re Soto*, 8 B.C.D. 723 (1st Cir. 1981).

■ In addition to Section 362(a)(6) the Credit Union has also violated the injunction created by this Court's order of discharge. Section 524(a)(2) of the Bankruptcy Code states that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived." [6] A copy of the Order of Discharge was sent to the Credit Union on January 7, 1981. In addition the debtor testified that he took a copy of the order to the Credit Union on the same date. Nevertheless, the Credit Union would not return the money to the debtor even though the discharge related back to the date of filing the petition, discharging the debtor from any further personal liability on the debt held by the Credit Union. Section 727(b).[7] On this date the Credit Union knew, or should have known that (1) the debtor was no longer personally liable on this debt as of the date of filing his petition; (2) the debtor had not voluntarily paid over post-petition earnings; (3) the discharge enjoined any act to collect the debt as a personal liability. By refusing to turnover to the debtor the deducted funds the Credit Union continued its efforts to collect a pre-petition claim from post-petition earnings. The Credit Union knew the discharge divested it of the right to enforce the obligation against the debtor personally. *In re Mar-*

---

**6.** 11 U.S.C.A. § 524(a)(2) (West 1979).

**7.** 11 U.S.C.A. § 727(b) (West 1979).

tin, 5 B.R. 188 (Bkrtcy.D.C.1980); *In The Matter of Bell*, 8 B.R. 549, 7 B.C.D. 219, 220 (Bkrtcy.E.D.Mich.1981); *In re Fellows*, 43 F.2d 122 (N.D.Okl.1930). This continuation of its attempt to collect the debt constitutes a violation of the Discharge Order and interferes with the Bankruptcy Code's purpose of granting the debtor a fresh start.

The creditor argued that Indiana Code Section 22–2–6–2 et seq. sets out the provisions for wage deductions in Indiana and authorizes payments made to credit unions as long as the provisions are complied with. For the purposes of this matter the statute merely represents that the arrangement between the debtor-employer-credit union was made in accordance with Indiana law. There is no issue here whether the payroll deduction arrangement was executed within the laws of Indiana. Additionally, Indiana law construes such an arrangement to be an assignment.[8] A pre-petition assignment is invalid after the discharge. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *McKeever v. Local Finance Co.*, 80 F.2d 449 (5th Cir. 1935); *Seaboard Small Loan Corporation v. Ottinger*, 50 F.2d 856 (4th Cir. 1931); *In re Soto, supra.* Consequently, the Credit Union had no right to apply the money toward the debt. Indiana law is not helpful to the creditor in this regard.

Violation of the injunction is punishable by contempt. *In re Kaping*, 13 B.R. 621, 622 (Bkrtcy.D.Or.1981); 3 Collier on Bankruptcy ¶ 524.01 at 524–8 (15th ed. 1982). It is necessary in order for civil contempt to be found that there has been a knowing violation of the Court's directives or orders. *In re Sandmar Corp.*, 12 B.R. 910 (Bkrtcy.D.N.M.1981). Thus knowledge or notice of the stay and of the order are necessary requirements. It is clear in this case that the Credit Union had actual notice of both the stay and the discharge order and that it knowingly conducted itself contrary to the same. Therefore the Court finds that the creditor is in contempt of this Court.

In addition to a return of the deductions retained by the Credit Union, the debtor

has asked the Court to grant costs and reasonable attorney fees. The Court agrees that the circumstances of this case justify the sanctions of costs and reasonable attorney fees. *In re Reed*, 11 B.R. 258 (Bkrtcy. D.Utah 1981).

Accordingly the Court grants debtor's motion for a determination that creditor is in contempt of this Court. The creditor must pay the debtor the amount of money retained pursuant to the payroll deductions after the date of the petition plus the interest that money would have earned to date of payment had it remained in the debtor's share draft account. Further, the creditor must pay the costs of this action and reasonable attorney fees. The Court hereby sets SEPTEMBER 1, 1982 at 1:00 o'clock p. m. in the Federal Building, 2nd Floor, 1300 South Harrison Street, Fort Wayne, Indiana, for a hearing to determine and approve an amount for costs and reasonable attorney fees.

SO ORDERED.

---

**8.** Ind.Code Ann. § 22–2–6–1 (Burns 1974).