**In re Isaac SILVERMAN, Bankrupt.**

**Arthur S. ROSENFELD, as Trustee of the Estate of Isaac Silverman, Plaintiff,**

**v.**

**122–24 EAST 25TH STREET CORPORATION, Defendant.**

**Bankruptcy No. 77 B 2988.**

United States Bankruptcy Court, S.D. New York.

Aug. 30, 1984.

---

See also 24 B.R. 123.

Jeffrey L. Sapir, Yonkers, N.Y., for trustee.

Baskin & Steingut, P.C., New York City, for 122–24 East 25th Street Corp.; Lawrence A. Mandelker, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for Leucadia, Inc.; Martin Bienenstock, New York City, of counsel.

## DECISION ON COMPLAINT OF TRUSTEE FOR AN ORDER ANNULLING AUTOMATIC STAY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy seeks an order annulling a bankruptcy stay so that its alleged violation may not be used against him by a mortgagee who was allegedly wiped out by an *in rem* tax foreclosure sale.

The defendant mortgagee, a corporation whose president is the bankrupt and whose stock is owned by the bankrupt's children, disputes, and the trustee in bankruptcy condones, the consequences of the *in rem* tax foreclosure judgment obtained by the City of New York, which purported to eliminate the defendant mortgagee's interest in certain property in New York City when there was on file in this court an *ex parte* stay order issued at the commencement of this case which memorialized the automatic stay under former Bankruptcy Rule 12–43.

This case was originally filed by Isaac Silverman under Chapter XII of the former Bankruptcy Act of 1898, as amended. The Chapter XII case was later converted for straight liquidation and a trustee in bankruptcy was appointed. The trustee originally opposed New York City's right to foreclose when it appeared that the property in question was owned by Grand White

Realty Corp., a corporation whose stock was owned by the bankrupt and that an *in rem* foreclosure action would eliminate any interest that the trustee might have had in the property. It later turned out that the property was actually owned by the bankrupt individually under an unrecorded deed that was subsequently produced. To the pleasant surprise of all parties, the City's foreclosure sale resulted in a surplus of approximately $1,300,000 after payment to the City of its taxes and charges, to which surplus the parties claim an interest. New York City was directed by this court to hold the surplus funds in escrow pending a determination in this case as to distribution.

The trustee in bankruptcy maintains that the defendant mortgagee was wiped out by the City's *in rem* foreclosure judgment and is not entitled to share in any of the surplus funds. The defendant mortgagee contends that the City's *in rem* foreclosure judgment was void because it violated the bankruptcy stay. The trustee argues that the stay existed for the benefit of the estate and that the defendant mortgagee may not employ the stay as a sword to the detriment of the estate. The issue is further complicated because the defendant mortgagee is presently suing the City of New York in an independent action in state court based upon substantially the same facts. This court previously denied the defendant mortgagee's application to be permitted relief from the stay so as to join the trustee in bankruptcy as a defendant in the state court action. This court concluded that it had no jurisdiction over the defendant mortgagee's action against the City of New York based upon state law mortgage rights, but that the trustee in bankruptcy should not be required to expend time and funds as a party to such action. The defendant mortgagee construes this court's ruling that it may sue the City of New York as long as it does not join the trustee in bankruptcy as an expression of the efficacy of the stay order and that the trustee in bankruptcy is now collaterally estopped from condoning the City's alleged violation of the stay. The defendant mortgagee also

argues that the trustee in bankruptcy is guilty of laches because he should have notified the court that he approved the City's foreclosure sale, notwithstanding the stay, when the defendant mortgagee sought to join the trustee in its state court action against the City.

## FINDINGS OF FACT

1. On December 23, 1977 Isaac Silverman filed with this court a petition under Chapter XII of the former Bankruptcy Act of 1898, as amended. Thereafter, on May 12, 1978, Isaac Silverman was adjudged bankrupt and the case was converted for liquidation under the aegis of the trustee in bankruptcy whose appointment and qualification were approved by the court.

2. On July 6, 1977, prior to the commencement of this bankruptcy case, the City of New York ("City") commenced an *in rem* action to foreclose unpaid tax liens on a number of properties including the premises located at 122–24 East 25th Street, in New York City ("the 25th Street property"). When the City's foreclosure action was commenced, the record owner of the 25th Street property was Grand White Realty Corp., a corporation whose stock was owned by the bankrupt.

3. The defendant mortgagee 122–24 East 25th Street Corporation ("122 Corp.") claims a first mortgage lien against the 25th Street property. The stock of this mortgagee is owned by the bankrupt's children and the bankrupt is its president.

4. When the bankrupt filed his Chapter XII petition on December 23, 1977, after the commencement of the City's *in rem* foreclosure action, but before the entry of judgment of foreclosure, he listed in his schedules as an asset all the shares of stock in Grand White Realty Corp., which in turn owned the 25th Street property. The filing of the Chapter XII petition operated as an automatic stay of all lien enforcement actions pursuant to former Bankruptcy Rule 12–43. Additionally, at the erstwhile debtor's request, the court signed an *ex parte* order dated December 27, 1977,

which memorialized the automatic stay and expressly restrained all creditors from attempting "to interfere with any property ... in the possession of said debtor ... or owned by said debtor ...." Despite these stays the City obtained a judgment of foreclosure on default on May 25, 1978. The mortgagee defendant, 122 Corp., neither appeared nor took any action to preserve its interest. On May 12, 1978, just prior to the entry of the judgment by the City, Isaac Silverman was adjudicated a bankrupt and the Chapter XII case was converted into a straight liquidation under the former Bankruptcy Act of 1898, as amended in 1938. The automatic stay under Rule 12–43 was terminated when the Chapter XII case was superseded by the straight bankruptcy case and was replaced by the automatic stay under Rule 601. Additionally, this court's *ex parte* stay order dated December 27, 1977 remained in effect.

5. On December 31, 1979, the trustee in bankruptcy commenced an adversary proceeding in this court against the City and the Commissioner of Finance for the City of New York alleging that the entry of the *in rem* judgment of foreclosure had been enjoined by this court and asked that the City's deed be set aside and that the City be enjoined from selling the 25th Street property. The City was preliminarily enjoined from disposing of the 25th Street property by order of this court dated January 4, 1980. On July 28, 1980 the trustee's complaint was dismissed for lack of jurisdiction because it appeared that Grand White Realty Corp., and not the bankrupt, was the record owner of the property in question.

6. Thereafter the trustee in bankruptcy discovered that the 25th Street property had been transferred back to Isaac Silverman individually by Grand White Realty Corp. pursuant to an unrecorded deed and that the estate therefore did have an interest in the 25th Street property.

7. On September 18, 1980, the trustee in bankruptcy moved to vacate the July 18, 1980 order dismissing the trustee's complaint against the City. The defendant

mortgagee was given notice of the trustee's motion and appeared in support of it. After a hearing and decision by this court from the bench on October 30, 1980, an order was entered on November 17, 1980, amended by an order dated December 15, 1980, which denied the trustee's motion to reargue the prior dismissal and allowed the foreclosure sale to take place, but provided that after sale of the premises the City should hold all surplus funds in escrow over and above the City's tax claims and charges pending determination by this court as to the claims of the City and the trustee in bankruptcy in the surplus proceeds. It was the City's position that having acquired title to the premises it was entitled to keep all of the proceeds of the sale. The trustee argued that the Bankruptcy Act precluded the City from obtaining this windfall and that the surplus funds were property of the estate to be distributed in accordance with the formula for distribution under the Bankruptcy Act.

8. On March 18, 1981, the defendant mortgagee, 122 Corp., commenced an action in this court for leave to name the trustee and the bankrupt as defendants in a state court action it proposed to initiate premised on the theory that the mortgage it held on the 25th Street property had not been validly foreclosed and that neither the City nor the trustee in bankruptcy was entitled to the surplus funds.

9. Pursuant to an order dated June 29, 1981, this court dismissed the defendant mortgagee's action on the ground that neither the trustee nor Silverman is a necessary party with respect to the litigation of the defendant mortgagee's claim that the mortgage it holds was not foreclosed by the City's *in rem* foreclosure action.

10. The 25th Street property was sold on July 1, 1981, producing a surplus of approximately $1,300,000, after payment to the City of its taxes and charges.

11. In the defendant mortgagee's state court action the City moved to dismiss the action for various reasons, including failure to state a cause of action and failure to comply with a statute of limitations. The

other named defendants asserted defenses of res judicata and collateral estoppel. Supreme Court Justice Greenfield denied the motions to dismiss in an opinion dated March 7, 1983, on the ground that "the vitality of the Bankruptcy Court's December 27, 1977 restraining order remained undiminished and the City should have remained stayed until further order of the Bankruptcy Court. (See *In re Chanticleer Assoc., Ltd.,* 592 F.2d 70, 74 [2nd Cir. 1979]). Accordingly, since the City was stayed by the Bankruptcy Court, that portion of the motion seeking to dismiss for failure to state a cause of action must be denied." This decision was affirmed by the Appellate Division of the New York Supreme Court on December 1, 1983.

12. The trustee argues that the defendant mortgagee should not be permitted to use the automatic stay as an affirmative weapon against the City so as to recover from the surplus funds to the detriment of the estate's interest in what the trustee regards as property of the estate.

## DISCUSSION

This case involves a rare instance where a trustee in bankruptcy, rather than a creditor of the estate, seeks relief from a bankruptcy stay because the stay is asserted by a creditor for its benefit and to the alleged detriment of the estate. The trustee maintains that the City of New York's tax foreclosure judgment, which was obtained after the conversion of this case from former Chapter XII to straight liquidation, and in the face of the automatic stay under Bankruptcy Rule 601 and the *ex parte* stay issued by the court at the commencement of the case consistent with the automatic stay, wiped out the defendant mortgagee's secured interest in the escrowed surplus funds held by the City, but did not eliminate the estate's interest in such funds. In order to reach the stage where the trustee might dispute the City's windfall claim to the surplus funds the trustee must first be relieved of the defendant mortgagee's secured claim which is senior to the equity interest of the estate. The defendant mort-

gagee warns the trustee that this position is dangerous to the trustee's interests because if the defendant's mortgage was wiped out when the City acquired title to the real estate in question after the *in rem* tax foreclosure judgment, so too was the trustee's equity in the surplus funds extinguished. However, the trustee disputes this proposition, which need not now be decided, and merely wishes to confirm that the defendant mortgagee may not continue to assert its secured interest in this case, which would otherwise have been extinguished, except for the defendant mortgagee's reliance upon the bankruptcy stay as voiding the City's foreclosure judgment. Accordingly, without determining at this time the dispute between the City and the trustee in bankruptcy, there is now presented for consideration whether or not the defendant mortgagee may assert the City's violation of the bankruptcy stay against the interests of the trustee in bankruptcy, who wishes to condone the entry of the City's foreclosure judgment and assert a claim against the City to the escrowed surplus foreclosure funds. In an effort to ensure that the trustee in bankruptcy need not suffer the defendant mortgagee's use of the stay against the interests of the estate, the trustee commenced this adversary action under Rule 601(c) for an order annulling the stay.

## COLLATERAL ESTOPPEL AND LACHES

The trustee in bankruptcy originally sought the benefit of the bankruptcy court's injunctive powers when he commenced an adversary proceeding on December 31, 1979, to set aside the City's foreclosure deed as violative of the automatic stay and the express *ex parte* stay order dated December 27, 1977. The trustee's action was dismissed because the record owner at that time was reflected as Grand White Realty Corp. The trustee again sought the benefit of the stay when he moved for reargument after it was discovered that the bankrupt was the actual owner of the 25th Street property pursuant to an unrecorded deed. The defendant

mortgagee was given notice of the trustee's motion and appeared in support of it. However, this court ruled that a foreclosure sale should take place notwithstanding the previous stay order and that the estate's interest would be adequately protected if the City were directed to hold any surplus foreclosure funds in escrow pending a determination of the claims of the trustee and the City in any such surplus. Accordingly, the trustee was directed by order of this court to permit the City to conduct its *in rem* tax foreclosure sale and to discontinue his reliance upon the efficacy of this court's stay order.

When the defendant mortgagee thereafter commenced an independent state court action against the City and sought leave from this court on March 18, 1981 for permission to name the trustee and Isaac Silverman as defendants in the state court action, the trustee was not required to assert the continued vitality of the December 27, 1977 stay order or the automatic stay under Rule 601. The trustee had already been directed by this court to forego the benefit of those stays and to look to any surplus funds that might be realized from the City's foreclosure sale. This court expressly did not address the defendant mortgagee's right to rely upon any alleged violation of the stay by the City because the court had no jurisdiction over any causes of action that the defendant mortgagee might have against the City based upon state-created mortgage rights and compliance with *in rem* tax foreclosure sales. The court merely denied the defendant mortgagee's application to name the trustee as a defendant in its state court action. Accordingly, there was no determination by this court which might give rise to the application of the doctrine of collateral estoppel against the trustee as to the merits of the defendant mortgagee's suit against the City.

The trustee in bankruptcy is not now bound by any ruling of this court or any conduct on his part to acquiesce in the defendant mortgagee's position that the City's tax foreclosure judgment violated a bankruptcy stay, especially when such a proposition would be inimical to the estate's claim to the surplus funds. The defendant mortgagee's reliance on the affirmative defenses of collateral estoppel and laches is misplaced. Indeed, as to the issue of laches, it appears that the defendant mortgagee is the party who failed to display a lack of diligence; it failed to appear upon notification of the City's tax foreclosure action and it failed to take any action to protect its interests until after the City obtained a foreclosure judgment.

## THE CITY'S VIOLATION OF THE BANKRUPTCY STAY

There has always been some uncertainty as to whether an *in rem* mortgage foreclosure following the commencement of a bankruptcy case by the mortgagor without the consent of the bankruptcy court renders the subsequent foreclosure judgment wholly void and ineffective. In *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 737–38, 51 S.Ct. 270, 271–72, 75 L.Ed. 645 (1931), the United States Supreme Court held that after the bankruptcy court acquired jurisdiction of the estate of a bankrupt all of the property of the estate may not be foreclosed upon by a state court over the objection of the trustee in bankruptcy. In *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), the Supreme Court declared that Congress, because of its power over the subject of bankruptcy, may render a judicial act taken with respect to the person or property of a debtor a nullity and vulnerable collaterally. *Id.* at 438–39, 60 S.Ct. at 345–46. In the *Kalb* case the Supreme Court opined that the Frazier-Lemke Act was intended to protect a former debtor from having his property foreclosed upon without court approval while his bankruptcy case was pending. *Id.* at 440, 60 S.Ct. at 346. In *Heffron v. Western Loan & Building Co.*, 84 F.2d 301, 304 (9th Cir.), *cert. denied*, 299 U.S. 597, 57 S.Ct. 189, 81 L.Ed. 440 (1936) the court stated that the mere fact that the bankrupt's property came into *custodia legis*, or that title passed to the trustee, did not ipso facto void a subsequent foreclosure of a lien against the property. The

court cited *Straton v. New*, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 (1931) as a refutation of the view that such subsequent foreclosure judgment was void. In the *Straton* case a lien had been obtained upon the bankrupt's real estate more than four months before the filing of the petition [1] and a state court order had been entered directing a foreclosure sale. Thereafter, a bankruptcy petition was filed and the trustee sought to enjoin the sale. The Supreme Court held that since the lien matured prior to the bankruptcy case, the proposed sale should not be disturbed.

■ In the instant case, there is no question as to whether the commencement of the original Chapter XII case gave this court *custodia legis* with respect to the property at issue so as to deprive the City from proceeding with its *in rem* mortgage foreclosure action because Bankruptcy Rule 12–43(a) and the *ex parte* stay order specifically enjoined the continuance of such action. The entry of the *ex parte* order obtained by the debtor memorialized the stay for its protection. The practice of debtors obtaining such *ex parte* orders was referred to in Collier on Bankruptcy as follows:

> Notwithstanding the sweep of Rule 12–43(a) which obviates the necessity of the debtor obtaining from the court an *ex parte* order restraining creditors as under Section 414 of the Act, this latter practice continues. Thus, upon the filing of the petition, and the submission to the bankruptcy judge to whom the chapter case has been referred of the order continuing the debtor in possession and permitting it to operate its property, the debtor will frequently submit an *ex parte* order achieving the broad stay now granted automatically by Rule 12–43(a) and well in advance of the first meeting notice.
>
> The entry of such an order is superfluous save insofar as it secures the debtor

with the knowledge early that creditors are specifically enjoined by reason of the order and are so informed by the debtor notwithstanding that they are automatically stayed upon the filing of the Chapter XII petition.

14A Collier on Bankruptcy ¶ 12–43.02, at 12–43–7 (J. Moore 14th ed. 1978).

When the Chapter XII case was converted for liquidation to a straight bankruptcy case, the trustee in bankruptcy then had the benefit of the automatic stay provided under former Bankruptcy Rule 601, as well as the continuation of the stay expressed in the *ex parte* order previously obtained by the erstwhile debtor.

The Advisory Committee's Note to subdivisions (b), (c) and (d) of Rule 601 broadly generalizes as follows:

> Whether the enforcement of a lien against property in the bankruptcy court's custody by an act or proceeding after bankruptcy without permission of the bankruptcy court is void has been the subject of conflicting views by the courts and commentators. See 1 Collier ¶ 2.62[1] & [2] (1968). This rule consists with the view that such an act or proceeding is void, but subdivision (c) recognizes that in appropriate cases the court may annul the stay so as to validate action taken during the pendency of the stay.

Those cases which declare that acts taken in violation of a bankruptcy stay are void and a nullity have so held for the benefit of the estate in order to protect it from dismemberment by creditors to the detriment of the debtor or the trustee in bankruptcy. *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306 (11th Cir. 1982); *Caribbean Food Products, Inc. v. Banco Credito y Ahorro Ponceno*, 575 F.2d 961 (1st Cir.1978); *Zestee Foods, Inc. v. Phillips Foods Corp.*, 536 F.2d 334 (10th Cir.1976); *Meyer v. Rowen*, 181 F.2d 715

---

**1.** Section 2(a)(21) of the former Bankruptcy Act gave to the Bankruptcy Court the power in straight bankruptcy cases to require receivers or trustees appointed in proceedings not under the Act within four months of bankruptcy "to deliver the property in their possession or under their control to the receiver or trustee appointed under this Act" and "to account to the court for the disposition by them of the property" of the bankrupt.

(10th Cir.1950); *Pott v. Potts,* 142 F.2d 883 (6th Cir.1944), *cert. denied,* 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945); *In re Coleman American Companies, Inc.,* 26 B.R. 825, 10 B.C.D. 185 (Bkrtcy.D.Kan. 1983); *In re Scott,* 24 B.R. 738 (Bkrtcy.M. D.Ala.1982); *In re Holland,* 21 B.R. 681, 9 B.C.D. 385 (Bkrtcy.N.D.Ind.1982); *In re Johnson,* 18 B.R. 755 (Bkrtcy.S.D.Ohio 1982); *In re Young,* 14 B.R. 809, 8 B.C.D. 641 (Bkrtcy.N.D.Ill.1981).

■ In the instant case the trustee in bankruptcy wishes to condone the City's entry of the *in rem* foreclosure judgment in violation of the automatic stay under Rule 601 and the *ex parte* stay order to enhance the estate's interest in the surplus funds held by the City. Thus, it is the mortgagee defendant who seeks to assert the City's violation of the bankruptcy stay to the detriment of the estate.

Under somewhat similar circumstances, where the debtor and a senior secured claimant sought to stipulate with respect to the continuance of the automatic stay, a junior secured creditor could not claim the benefit of the stay in *In re Stivers,* because

> the automatic stay operates in favor of debtors and estates (represented by trustees and debtors-in-possession) only and that it gives junior lienholders and other parties interested in the property affected by the automatic stay no substantive or procedural rights.

31 B.R. 735 (Bkrtcy.N.D.Cal.1983). This point was also stated in *In re Fuel Oil Supply and Terminaling, Inc.,* 30 B.R. 360, 362, 10 B.C.D. 1035, 1036 (Bkrtcy.N.D. Tex.1983) as follows:

> The automatic stay is for the benefit of the debtor and if it chooses to ignore stay violations other parties cannot use such violations to their advantage. Moreover, the characterization of every violation of § 362 as being absolutely void is inaccurate and overly broad. For example, certain good faith actions under §§ 542(c) and 549(c) of the Bankruptcy Code are protected although they may be technical violations of the stay. This is also true for certain acts permitted under

§ 546 of the Code. More accurately, stay violations may be voidable at the debtor's or trustee's instance rather than absolutely void.

The automatic stay imposed under former Rule 601, and the *ex parte* order which the erstwhile debtor obtained consistent with the then applicable automatic stay under former Rule 12–43, were not intended to be used as weapons by creditors to the detriment of the estate. The bankruptcy stay protected the debtor and the estate from harassment by creditors. However, the defendant mortgagee was free to take whatever action it believed necessary to guard its interests in the property in question. Having sat back and permitted the City to obtain an *in rem* foreclosure judgment against the property for unpaid tax liens the defendant mortgagee should not now be heard to say that the judgment is ineffective when the trustee in bankruptcy seeks to realize an advantage for the estate as a result of the foreclosure judgment.

Although not addressed by the parties, there is a more fundamental reason why the defendant mortgagee may not now attack the validity of the City's foreclosure judgment. On October 30, 1980 the defendant mortgagee, the trustee and the City participated in a hearing regarding the trustee's motion to vacate the July 18, 1980 order dismissing the trustee's complaint to enjoin the City's *in rem* tax foreclosure. The court's bench decision was reflected in the orders dated November 17, 1980, and December 15, 1980, which recognized the City's *in rem* foreclosure judgment and authorized the City to sell the property free and clear of all liens and encumbrances "with the claims of the City of New York and the Trustee to attach to the proceeds of sale." The City's right to acquire title to the property and conduct a foreclosure sale for unpaid tax liens was predicated on a judicially ratified valid *in rem* foreclosure judgment. The defendant mortgagee did not appeal from these orders and is therefore bound by them.

Since the defendant mortgagee may not employ the bankruptcy stay against the

trustee in bankruptcy and because this court's previous orders recognized the validity of the City's *in rem* tax foreclosure judgment and sale, there is no bankruptcy stay available to the defendant mortgagee with respect to the property in question. The trustee in bankruptcy is therefore entitled to have the record in this case expressly reflect the fact that notwithstanding the absence of an order lifting the stay, no bankruptcy injunction impaired the validity of the City's *in rem* foreclosure judgment and subsequent sale. Subsection (c) of former Rule 601 may be employed to correct this technical omission.

Former Rule 601(c), which applies in this case,[2] states, in relevant part:

The court may, for cause shown, terminate, *annul*, modify, or condition such stay. (Emphasis added).

The Advisory Committee's Note accompanying subsection (c) says that "in appropriate cases the court may annul the stay so as to validate action taken during the pendency of the stay." Having previously validated the City's foreclosure sale of the property in question, it is only appropriate that the court grant the trustee's application to annul the automatic stay under Rule 601(c) and the *ex parte* stay obtained at the commencement of this case so as to confirm the prior judicial recognition of the City's action and to lift any cloud as to the validity of such action.

The defendant's affirmative defenses are directed against the trustee's right to an annulment of the stay and have not been established. The defendant mortgagee's counterclaim for attorneys' fees and costs is based upon its assumption that the stay may be used against the trustee to invalidate the City's *in rem* foreclosure judgment. Since this point was not sustained, the counterclaim must be dismissed.

## CONCLUSIONS OF LAW

1. The City's *in rem* foreclosure judgment against the 25th Street property

owned by the bankrupt and the subsequent sale were previously authorized pursuant to this court's orders dated November 17, 1980 and December 15, 1980, which were entered following a hearing attended by the trustee in bankruptcy, the City and the defendant mortgagee.

2. The defendant mortgagee may not now assert the invalidity of the City's *in rem* foreclosure judgment against the trustee in bankruptcy.

3. The trustee in bankruptcy is entitled to an order pursuant to Bankruptcy Rule 601(c) annulling the automatic stay under Rule 601 and the *ex parte* stay order issued at the commencement of this case so as to confirm the validity of the City's *in rem* foreclosure judgment and sale with respect to the bankrupt's 25th Street property.

4. The defendant mortgagee's affirmative defenses and counterclaim have not been established and should be dismissed.

SUBMIT ORDER on notice.

---

**2.** Pursuant to Bankruptcy Rule 1001, which became effective on August 1, 1983, the new Bankruptcy Rules superseded the former Bankruptcy Rules and apply to cases under the Code, with

the result that the former Bankruptcy Rules apply to cases under the Act. *In re Silverman,* 36 B.R. 254, 257 (Bkrtcy.S.D.N.Y.1984).