PER CURIAM.
 

 Defendant James Russell Heliums, an employee of Bethlehem Steel Corporation, voluntarily executed an “Authorization for Credit Union Payroll Deduction” that required his employer to withhold $10 from each regular payment of his wages and to transfer the sum to the plaintiff Bethlehem Employees Federal Credit Union (“Bethlehem”). The authorization, by its terms, remained in effect until cancelled or modified by Heliums in writing. On March 22, 1978 Heliums borrowed money from Bethlehem. He subsequently increased his payroll deduction to thirty dollars. Bethlehem applied half this sum to his loan, and credited the other half to his savings account. On August 11, 1982 Heliums filed for bankruptcy under Chapter 7 of Title 11. Bethlehem received its Notice of First Meeting of Creditors and Automatic Stay on September 20, 1982. Notwithstanding this notice, Bethlehem continued to apply half of Hel-iums’ automatic payroll deduction to his pre-petition debt. Heliums’ attorney, on October 20, 1982, demanded revocation of the payroll deduction authorization and return of all post-petition money applied to the loan. Soon afterwards, Bethlehem stopped applying Heliums’ payroll deductions to its loan and instead placed all of the transferred funds into his savings account.
 
 [1]
 
 On December 1, 1982, Bethlehem brought this complaint for declaratory judgment, seeking clarification of its right to the post-petition payroll deductions that it had applied to Heliums’ outstanding loan balance. The bankruptcy court held that Heliums was “entitled to return and refund of monies collected by [Bethlehem] after the date of filing of [his] bankruptcy petition” and ordered Bethlehem “to remit and refund to James Russell Heliums any and all monies collected by it subsequent to August 11, 1982” (subject to a set-off not at issue here). On appeal, the district court affirmed. Relying heavily on
 
 In re Matter of Holland,
 
 21 B.R. 681 (Bankr.N.D.Ind.1982), the court held that
 

 [t]he transfer by a creditor of post-petition money received pursuant to a pre-pe-tition automatic withdrawal-loan repayment arrangement to pay a pre-petition debt owed to that creditor is a violation of the automatic stay unless the debtor has presented the creditor with some formal evidence of his or her willingness to voluntarily have post-petition earnings applied to a dischargeable pre-petition debt (citations omitted).
 

 Heliums never presented Bethlehem with such formal evidence, and Bethlehem’s continued acceptance “of the payments under the circumstances was a violation of the stay” regardless of the voluntary or invol
 
 *381
 
 untary nature of the payments. This appeal followed.
 
 [2]
 

 Like the district court, we must accept the bankruptcy court’s findings of fact unless they are clearly erroneous.
 
 In re Kimzey,
 
 761 F.2d 421, 423 (7th Cir.1985); R. Bankr. P. 8013. We can, however, review any lower court’s conclusions of law
 
 de novo. Pullman-Standard v. Swint,
 
 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982);
 
 In re Evanston Motor Co.,
 
 735 F.2d 1029, 1031 (7th Cir.1984). Heliums filed no answer (nor any briefs) and we therefore accept as true the factual allegations contained in Bethlehem’s December 1, 1982 complaint. R. Bankr. P. 7008(a); Fed.R.Civ.P. 8(d). Since the parties stipulated to the only other evidence in the record, we review an undisputed set of facts and must only determine whether the district court applied the correct law.
 

 Post-petition wages are not property of the estate of a Chapter 7 bankrupt. 11 U.S.C. § 541(a)(6). Debtors who file under that chapter can dispose of their post-petition earnings as they choose, including voluntary repayment of debts otherwise dischargeable in bankruptcy. 11 U.S.C. § 524(f). Bethlehem contends that Heliums’ automatic wage assignment was a voluntary repayment of his loan. Moreover, it argues that the Code’s automatic stay does not apply to such a voluntary repayment, rather, it only prohibits creditors from taking affirmative collection action against debtors. Because Bethlehem took no such action, it argues that the lower courts erred in finding that it violated the stay.
 

 Section 362(a)(6) provides that “... a [Chapter 7 bankruptcy] petition ... operates as a stay, applicable to all entities, of ... any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title against any claim against the debt- or....” Bethlehem would have us read the phrase “any act” narrowly, limiting the reach of the stay to those situations where creditors take positive steps to recover on their claims. They cite a portion of the legislative history of the section that states:
 

 Paragraph (6) prevents creditors from attempting in any way to collect a pre-petition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors. H.R. Rep. No. 595, 95th Cong. 1st Sess. 342 (1977).
 

 We hold that Congress intended the stay of section 362(a)(6) to apply to the automatic (as well as coerced) transfer and application of post-petition funds to the pre-petition debts of Chapter 7 debtors.
 
 See In re Matter of Holland,
 
 21 B.R. 681 (Bankr.N.D.Ind.1982);
 
 In re Bullock,
 
 41 B.R. 637, 640 (Bankr.E.D.Penn.1984).
 
 Cf. In re Whisenton,
 
 40 B.R. 468, 469 (Bankr.D.C.1984) (because of automatic stay, filing of Chapter 7 petition terminates voluntary nature of automatic payroll deduction). One of the basic policies promoted by the stay is the halting of all collection efforts to permit the bankrupt a more effective financial rehabilitation (or “fresh start”). An automatic wage assignment that lulls an unthinking debtor into paying-off a dischargea-ble debt defeats this purpose no less than threats and intimidation from sophisticated creditors. Congress broadly sought to prevent creditors “from attempting
 
 in any way
 
 to collect a prepetition debt” (emphasis added), and expressed special concern for “[ijnexperienced, frightened, [and] ill-counseled debtors_” Such debtors are precisely the sort who would not know to contact their employers to halt automatic wage assignments in satisfaction of pre-pe-tition debts.
 

 
 *382
 
 Bethlehem fails to indicate how congressional intent is defeated by requiring creditors to obtain some positive indication that debtors indeed intend to voluntarily assume their pre-petition debts. Such a requirement safeguards against inadvertent repayment yet preserves the right of a debt- or to voluntarily re-affirm otherwise dis-chargeable obligations.
 

 The decision of the district court is
 

 Affirmed.
 

 [1]
 

 . The record does not disclose when, if ever, Heliums cancelled in writing his authorization for automatic wage deductions or modified his authorization to limit the transfer of his deductions to his savings account only.
 

 [2]
 

 . This appeal does not consider whether Bethlehem’s post-petition application of Heliums’ funds to its loan was in contempt of the bankruptcy court's stay order.