**In re Charles Arthur RAPER and Susan Lynn Raper, Debtors.**

**Bankruptcy No. 93–04744.**

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

Dec. 22, 1994.

James L. Chase, Pensacola, FL, for debtors.

F. Palmer Williams, Tallahassee, FL, for credit union.

Thomas Reed, Trustee, Pensacola, FL.

*MEMORANDUM OPINION*

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on the Motion of the debtor, Susan Lynn Raper, for contempt against the Santa Rosa Teach-

ers' Federal Credit Union for the violation of the automatic stay provisions of 11 U.S.C. § 362(a). Having heard the testimony of the witnesses, and considered the documentary evidence presented, arguments of counsel, and memoranda of law, the court makes the following findings of fact and conclusions of law.

In December of 1990, debtor applied for and received a line of credit from the Credit Union. She executed a Permanent Loan Agreement and a voluntary payroll Deduction Authorization in favor of the Credit Union.[1] The Deduction Authorization requested that debtor's employer withhold a certain sum from each payroll check and to transmit that sum to the Credit Union to be applied to debtor's line of credit. These deductions were clearly delineated on each of the debtor's pay stubs. Debtor filed a Chapter 7 petition on August 23, 1993. At that time, debtor did not request the Credit Union or her employer to terminate the payroll deduction and the deductions of $132.00 per month continued to be made from her pay and remitted to the Credit Union.

On September 29, 1993, counsel for the Credit Union sent a letter to debtor through her counsel, James L. Chase of James L. Chase & Associates, P.A., informing her that Credit Union policy required the termination of services of any member that caused the Credit Union a loss. The Credit Union's "Denial of Services Policy" stated that a member could enter a valid and enforceable reaffirmation agreement and continue to receive services. The Policy also provided that if the member voluntarily repaid the debt, without the benefit of a valid and enforceable reaffirmation agreement, the Credit Union may choose to continue providing services. The Credit Union received no response to this letter.

Despite having notice of the filing of the Chapter 7 petition, the Credit Union contin-

ued to accept payments pursuant to the voluntary payroll deduction authorization signed by the debtor. Debtor failed to make any effort to terminate the payroll deduction for over three months after filing the petition. On December 24, 1993, Mr. Chase wrote a letter demanding that the Credit Union disgorge two payments received post-petition and applied to the pre-petition debt. The deductions were immediately stopped by the Credit Union upon receipt of this letter.[2] Mr. Chase wrote a second letter in January of 1994, noting that a total of four deductions of $132.00[3] were applied to the debt, and demanding their return. The Credit Union still refused to disgorge the payments. The instant motion followed.

The Credit Union contends that it did not take any action to collect the debt and therefore did not violate the automatic stay. The Credit Union asserts that the payments were being voluntarily made pursuant to the Deduction Authorization between the debtor and her employer. Since the debtor failed to take any action to terminate the payroll deduction, the Credit Union assumed that the debtor wished to voluntarily repay the debt in order to continue receiving Credit Union services. The Credit Union's position that it took no "action" to collect the debt that violated § 362(a) by merely accepting the payments is premised upon the cases of *Short v. Drover St. Fed. Credit Union (In the Matter of Short)*, No. IP 79–2612B (Bkrtcy.S.D.In.1980) (unreported) and *In re Hans*, No. 80–61269 (Bkrtcy.N.D.In.1981) (unreported). In both of those cases, as in the instant case, the debtors had authorized their employers to deduct certain sums from their payroll checks and to transmit those deductions to the credit union as payment for a debt. Both courts found that this did not constitute an "action" by the credit union that violated the stay. The *Hans* court remarked that it was the debtor's responsibility

---

1. While the line of credit varied in amount over the term of this agreement, the payments were consistently made by executing amended payroll deductions. The amount and frequency of the changes made are not relevant to this opinion.

2. One payment was received from the employer after receipt of Mr. Chase's letter, but that pay-

ment was credited to the debtor's share account and not applied to the loan.

3. The evidence reflects that from the $132.00 per month payments received by the Credit Union, $131.36 was applied to the debt and $.64 was credited to the debtor's share account. Thus, a total of $525.44 was applied to the loan.

to take the necessary action to withdraw the payroll deduction if he did not wish the voluntary deductions to continue to be made.

Debtor argues that the Credit Union violated the stay imposed by 11 U.S.C. § 362(a) by accepting the payments, by applying them to the pre-petition indebtedness, and by refusing to disgorge the payments on demand. In support of her position, debtor relies on *In the Matter of Holland*, 21 B.R. 681 (Bkrtcy.N.D.In.1982).[4] The *Holland* court held a credit union in contempt for accepting the debtor's post-petition wages pursuant to a voluntary payroll deduction. The debtor had made several unsuccessful attempts to terminate the voluntary payroll deduction in favor of the credit union. *Id.* at 684. The court found that the credit union had actual knowledge of both the discharge order and the automatic stay, and still knowingly acted to collect the debt. Because of the particular circumstances, the court awarded the return of the deductions (plus interest at the rate the money would have earned had it remained in the share account), costs, and attorney fees. *Id.* at 689.

■ The Bankruptcy Code is clear that post petition wages are not part of the Chapter 7 estate. 11 U.S.C. 541(a)(6). Nonetheless, actions to collect pre-petition debts from post-petition wages are a violation of the stay. *Matter of Hellums*, 772 F.2d 379 (7th Cir.1985); *In re Brooks*, 132 B.R. 29 (Bkrtcy. W.D.Mo.1991). The Seventh Circuit has held that Congress intended for the automatic stay provisions to apply to the "automatic (as well as coerced) transfer and application of post-petition funds to the pre-petition debts of Chapter 7 debtors." *Hellums*, 772 F.2d at 381. While the Eleventh Circuit has not specifically addressed this issue, it appears that it too takes a similarly broad view of the protections afforded by the automatic stay. *See B.F. Goodrich Employees Fed. Credit Union v. Patterson (In re Patterson)*, 967 F.2d 505 (11th Cir.1992) (Credit union's administrative freeze of Chapter 13 debtor's account violated the automatic stay).

■ In the instant case, the credit union asserts that it applied the post-petition wage deductions to the debt because it is assumed the payments were voluntarily being made pursuant to § 524(f) of the Code. In light of *Hellums*, I would caution creditors from making such an assumption without confirmation from the debtor. I am compelled to agree with the view expressed by Judge Koger in *Brooks:*

> A highly prudent creditor who receives a notice of bankruptcy from a debtor with a payroll deduction being used to pay an unsecured debt, would probably consider a form letter to debtor's counsel advising that debtor may terminate the payroll deduction upon whatever form is required and also advise the availability of that form. Even if the creditor chooses not to pursue that avenue, if it is even slightly prudent, it should immediately refund any post petition payments it has received via the automatic wage deduction the minute it receives a request for refund.

132 B.R. at 30. Because of the paternalistic protection afforded to debtors by Congress through the automatic stay provisions, a creditor should get an affirmative indication post-petition from a debtor that the debtor wishes to continue a voluntary payroll deduction initiated pre-petition. Absent such an affirmative indication, a creditor acting in the utmost of good faith may still be liable for the return of all post-petition payments (plus interest), costs, and attorney fees for the debtor.

■ While I accept the Credit Union's assertion that the payments were accepted under the mistaken impression that the deductions continued voluntarily, I still find the application of the those payments to the debt a technical violation of the stay, specifically § 362(a)(6). The refusal to disgorge the payments upon the debtor's request is a further violation of the stay. However, I do not find the Credit Union's actions willful and therefore sanctionable because the Credit Union accepted and applied the payments in good faith reliance on the *Short* and *Hans* cases.

---

4. *Holland* was decided before the enactment of 11 U.S.C. § 524(f), which permits a debtor to voluntarily repay pre-petition debts, without the formality of a reaffirmation agreement. Nonetheless, *Holland* is the seminal case on this issue and warrants acknowledgement.

Accordingly, I hold that the Credit Union must return to the debtor the $525.44 in post-petition deductions which were applied to the loan, plus interest that would have accrued if the funds were deposited in the share account.